UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH OMOKEHINDE,   No. 06-15241

    Plaintiff,   District Judge Gerald E. Rosen

v.   Magistrate Judge R. Steven Whalen

DETROIT BOARD OF EDUCATION,
a/k/a DETROIT PUBLIC SCHOOLS, a
body corporate, and JENNIFER JOUBERT,
individually and in her official capacity,
Jointly and Severally,

    Defendants.
_____/

**OPINION AND ORDER**

Before the Court are Defendant Detroit Board of Education's motion to compel discovery [Docket #19], and a motion to intervene and for protective order [Docket #21], filed by the Detroit Free Press and Chastity Pratt, a Free Press reporter. Because both motions involve the question of the discoverability of Ms. Pratt's email communications with the Plaintiff, they will be considered together.

    **I.   FACTUAL BACKGROUND**

This case arises out of the termination of Plaintiff's employment (more commonly referred to as "firing") with Defendant Detroit Board of Education. Plaintiff originally filed her complaint in the Wayne County Circuit Court, alleging wrongful discharge in violation of Michigan public policy (Count I); unlawful retaliation for exercise of First Amendment

-1-

rights, pursuant to 42 U.S.C. §1983 (Count II); disability discrimination in violation of Michigan law (Count III); age discrimination in violation of Michigan law (Count IV) and retaliation in violation of Michigan law (Count V). The Defendant removed the case to this Court pursuant to 28 U.S.C. §1331, based on federal question jurisdiction, specifically Plaintiff's §1983 claim.

Plaintiff's First Amendment / §1983 claim arises out of her communication with Detroit Free Press reporter Chastity Pratt regarding alleged improprieties by the Board and Defendant Joubert, including misuse of federal funds through no-bid contracts to an ex-convict with no public relations experience, and nepotism. On March 11, 2005, Ms. Pratt wrote a Free Press article discussing these issues.[1] The article did not name the Plaintiff as a source.

In its Request to Produce No. 19, the Defendant requested documents "reflecting or relating to any report, complaint, concern or communication of any kind Plaintiff has sent to *or received from* any news media, including but not limited to the Detroit Free Press and

---

[1] While factual, the article does not portray the Board or Ms. Joubert in a flattering light. The article (a copy of which is attached to the Detroit Free Press's Motion to Intervene [Docket #21], begins, "Detroit Public Schools paid a company run by an ex-convict with no experience in public relations more than a half-million dollars to create what some say was a failed program to boost parent involvement." Referring to the millions of dollars of federal Title I money flowing to the Detroit Public Schools, the article notes that "some of that money has gone to pay the no-bid contract with [Larry] Nelson, who was convicted of extortion in 1975 and served time in prison, according to the Michigan Department of Corrections. DPS spokesman Ken Coleman would not say whether DPS did a criminal-background check on Nelson or when it found out he was a felon." The article also stated that "[a]nother company that has profited from the flyer drive was Digital Destinies, owned by Joubert's brother, Blair Adams."

The Detroit News." (Emphasis added). In response, Plaintiff produced copies of emails she had sent to Ms. Pratt, redacted to omit Ms. Pratt's replies.

Defendant now moves to compel production of Ms. Pratt's responses. Plaintiff objects on the basis that Ms. Pratt, who is represented by different counsel, may have a privilege that Plaintiff cannot waive, and Ms. Pratt's emails are irrelevant:

> "Moreover, in that Plaintiff has produced to Defendants her email *to* Ms. Pratt, the only email which is pertinent to Plaintiff's First Amendment claim, Plaintiff submits that the email *from* Ms. Pratt [is] irrelevant. Obviously, Plaintiff's First Amendment claim is not based on confidential communications she received from Ms. Pratt." (Plaintiff's Response, ¶6)(emphasis in original).

The Detroit Free Press and Ms. Pratt have moved to intervene, claiming a qualified First Amendment privilege.

## II. ANALYSIS

### A. First Amendment Privilege

Both the Plaintiff and Intervenors Detroit Free Press and Chastity Pratt assert that any communications from Ms. Pratt to the Plaintiff are protected by a qualified First Amendment news-gatherers' privilege. The existence or applicability of such a privilege has been the subject of numerous and divergent judicial decisions since the Supreme Court's 1972 opinion in *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).[2] In *Branzburg*, reporters were subpoenaed to give grand jury testimony regarding matters on which they had

---

[2] In *United States v. Markiewicz*, 732 F.Supp. 316, 318 (N.D.N.Y. 1990), the court remarked that "the variety of interpretations of *Branzburg* is astonishing."

-3-

reported. The Supreme Court, in a 5-4 decision written by Justice White, held that "the Constitution does not, as it never has, exempt the newsman from performing the citizen's normal duty of appearing and furnishing information relevant to the grand jury's task." *Id.*, 408 U.S. at 691. Although declining to endorse a generalized constitutional privilege for reporters, Justice White's opinion concluded with a recognition that "news gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment." *Id.*, 408 U.S. at 707.

Justice Powell filed a separate concurring opinion in *Branzburg*, stressing what he viewed as "the limited nature of the Court's holding," and suggesting that reporters' claims of First Amendment privilege should be scrutinized under a case-specific balancing test:

> "The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions." *Id.*, 408 U.S. at 710 (concurring opinion of Powell, J.).

Following the Supreme Court's decision, lower courts have reached varying conclusions as to whether *Branzburg*, which involved a criminal grand jury subpoena, has any application to a subpoena or request for information in a civil case, and whether, in view of Justice Powell's concurrence, reporters retain a qualified First Amendment privilege which is subject to a balancing test. In *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 397-401 (E.D. Mich. 2003), I surveyed the lead opinions on these issues from

the D.C. Circuit,[3] the Second Circuit,[4] the Third Circuit,[5] the Fourth Circuit,[6] the Fifth Circuit,[7] and (most importantly) the Sixth Circuit.[8] Recognizing that the majority of Circuits that have addressed the issue endorse some form of a qualified First Amendment reporters' privilege, I nonetheless concluded that *In re Grand Jury Proceedings* proscribed the application of any First Amendment privilege, qualified or otherwise, for reporters. In so finding, I came to a different conclusion than did Judge McKeague in *Southwell v. Southern Poverty Law Center*, 949 F.Supp. 1303, 1311-12 (W.D. Mich. 1996), who found that the Sixth Circuit's rejection of the qualified privilege/balancing approach taken by other Circuits was dictum, and hence not applicable to civil cases. However, in *DaimlerChrysler*, I explained:

> "In reaching its decision in *Grand Jury Proceedings*, the Sixth Circuit undertook a detailed analysis of *Branzburg*, and concluded that the very test proposed by Respondents in the present case–that reporters have a qualified First Amendment privilege which can be overcome only if the party seeking the information meets some balancing test–was without support in either

---

[3] *Zerilli v. Smith*, 656 F.2d 705 (D.C. Cir. 1981).

[4] *Baker v. F&F Investment*, 470 F.2d 778 (2nd Cir. 1972).

[5] *Riley v. City of Chester*, 612 F.2d 708 (3rd Cir. 1979); *United States v. Cuthbertson*, 630 F.2d 139 (3rd Cir. 1980), *cert. denied* 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981).

[6] *LaRouch v. National Broadcasting Co.*, 780 F.2d 1134 (4th Cir.), *cert. denied* 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986).

[7] *Miller v. Transamerican Press, Inc.* 621 F.2d 721 (5th Cir. 1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981).

[8] *In re Grand Jury Proceedings*, 810 F.2d 580 (6th Cir. 1987).

> Justice White's majority opinion or Justice Powell's concurrence. Rather, the Sixth Circuit found that the only support for the qualified privilege/balancing approach was in Justice Stewart's dissent, which was "rejected by the majority." *Grand Jury Proceedings*, 810 F.2d at 584. Furthermore, in reaching its conclusions, the Court in *Grand Jury Proceedings* explicitly rejected the reasoning and the holding of the very cases from other Circuits on which the Respondents rely in the present case, including *Zerilli v. Smith, United States v. Burke*, and *United States v. Cuthbertson*. *Id.,* at 584-85, fn. 6. The Sixth Circuit's analysis was not a mere passing comment, but central to its ultimate decision. Its statement that *Branzburg* did not create any qualified privilege was categorical, not ruminative. *DaimlerChrysler*, 216 F.R.D. at 401.

*See also Hade v. City of Fremont*, 233 F.Supp.2d 884, 888 (N.D. Ohio 2002) ("This is a ruling, not merely an ancillary or collateral comment with no authoritative bearing or relationship to the court's result. The Sixth Circuit's decision in *Grand Jury*, though a minority of one, is the law in this circuit"); *Warzon v. Drew*, 155 F.R.D. 183, 186 (E.D. Wis. 1994) (describing the Sixth Circuit's holding in *Grand Jury Proceedings* as follows: "*Branzburg* establishes that there is no journalist's privilege, of any kind, in a *criminal or civil* proceeding" (emphasis in original)).

The Intervenors have not convinced me to reconsider the position taken in *DaimlerChrysler*, where I stated that "however cogent and persuasive I may find the reasoning of cases such as *Southwell* and *Zerilli*, I am constrained by Sixth Circuit precedent to find that Respondents are not constitutionally shielded by a First Amendment privilege, qualified or otherwise." *Id.*, 416 F.R.D. at 401. Therefore, they are not entitled to a protective order based on a claim of privilege.

    **B.    Application of the Discovery Rules to Reporters' Communications**

However, *DaimlerChrysler* also held that a demand for a journalist's material is subject to scrutiny under general principles of discovery as set forth in Fed.R.Civ.P. 26(b)(1), 12(b)(2) and 26(c), and that in applying those Rules, one's status as a news-gatherer must be balanced along with the requesting party's need for the information, its relevance, and other well-established discovery factors that are addressed to the court's discretion. In support of this holding, *DaimlerChrysler* again drew from the Sixth Circuit's decision in *Grand Jury*, noting that:

> "[i]n footnote 7 of its opinion, *Grand Jury* cited *Bruno & Stillman, Inc. v. Globe Newspaper Co.*, 633 F.2d 583 (1st Cir. 1980), where the First Circuit stated:
>
> 'Whether or not the process of taking First Amendment concerns into consideration can be said to represent recognition by the Court of a 'conditional', or 'limited' privilege is, we think, largely a question of semantics. The important point for purposes of the present appeal is that courts faced with enforcing requests for the discovery of materials used in the preparation of journalistic reports should be aware of the possibility that the unlimited or unthinking allowance of such requests will impinge upon First Amendment rights. *In determining what, of any, limits should accordingly be placed upon the granting of such requests, courts must balance the potential harm to the free flow of information that might result against the asserted need for the requested information.*' 633 F.2d at 595-596 (footnotes omitted)." *DaimlerChrysler*, 416 F.R.D. at 402, fn.9 (Emphasis added).

The Court will therefore examine Defendant's request for production of Ms. Pratt's emails under the Federal Rules, with due regard to her status as a journalist.

The Defendant's first problem is that Ms. Pratt's emails are not relevant to any claims or defenses in this case. Plaintiff claims that Defendant retaliated against her for exercising her First Amendment right to contact the media. In *Rodgers v. Banks*, 344 F.3d 587, 596 (6th

Cir. 2003), the court described the elements of a First Amendment retaliation claim as follows:

> "[I]n determining whether a public employer has violated the First Amendment by firing a public employee for engaging in speech, the Supreme Court has instructed courts to engage in a three-step inquiry. First, a court must ascertain whether the relevant speech addressed a matter of public concern. *See Connick v. Myers,* 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). If the answer is yes, then the court must balance the interests of the public employee, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Finally, the court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry,* 209 F.3d at 604."

It is the Plaintiff's own emails and communications, not those of Ms. Pratt, that give rise to her claim. The content of the Plaintiff's emails–which have been produced–bear on the question of whether they address a matter of public concern, as does the Free Press article that was published. Ms. Pratt's responses to the Plaintiff's emails are irrelevant to any of the standards set forth in *Rodgers*, or, at best, cumulative as to the question of whether the *Plaintiff's* speech involved a matter of public concern.[9] Ms. Pratt's emails are likewise irrelevant to weighing the "interests of the public employee," or whether there was a causal relationship between the Plaintiff's speech and the Defendant's decision to fire her.

Weighing this lack of relevance against the fact that the emails were generated by a

---

[9] It would be difficult to characterize a school board's alleged misuse of public money as anything other than a matter of public concern. This prong of *Rodgers* and *Pickering* is unlikely to be seriously disputed in this case.

reporter during the course of a journalistic investigation, and in the exercise of my discretion, I find that Ms. Pratt's emails are not discoverable. In so holding, I reiterate the following admonition of *DaimlerChrysler*:[10]

> "The question of whether the request (or demand) for information from a news-gatherer is made in good faith was of concern to the Court in *Branzburg* and *Grand Jury Proceedings*, notwithstanding the rejection of a constitutional privilege in those cases. Given the important role that news gathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents. While I reiterate that the Sixth Circuit has not adopted the qualified privilege approach of the Second, the following cautionary language of *Gonzales v. Nat'l Broadcasting Co., Inc.,* 194 F.3d 29, 35 (2nd Cir. 1999) is apropos in scrutinizing the good faith of a discovery request even under a Rule 26(b)(2) or 26(c) paradigm:
>
>> 'If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through the press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties–particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation...And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.'" 416 F.R.D. at 406.

Therefore, the Defendant's motion to compel the production of Ms. Pratt's emails or

---

[10]The fact that the present case involves a discovery request directed to a non-journalist party, rather than a subpoena directed to a reporter, does not alter the analysis. In either case, there is an unwarranted and dangerous intrusion into news-gathering activity that must be factored into the discovery decision.

other communications to the Plaintiff will be denied. Likewise, the motion of the Detroit Free Press and Ms. Pratt to intervene and for a protective order precluding the production of Ms. Pratt's emails will be granted.

### C.  Discovery Request for Plaintiff's Financial Information

In its motion to compel [Docket #19], Defendant also requests production of various financial records of the Plaintiff, as set forth in Request Nos. 27 to 31 and 33. Specifically, Defendant requests information as to Plaintiff's savings and checking accounts, certificates of deposit, money market and IRA accounts, and outstanding loans. Defendant argues that this information is relevant to Plaintiff's claim for economic damages "resulting, in part, from her alleged loss of income following her termination." *Defendant's Motion*, ¶9. Plaintiff has objected to production of these documents, stating, "Defendants have already been provided with the pertinent information and documents with respect to Plaintiff's economic losses in a far more practical, and less burdensome manner than currently sought by Defendant Board." *Plaintiff's Response*, ¶11.

It is well established that "the scope of discovery is within the sound discretion of the trial court." *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993); *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981). In exercising its discretion, the court should first consider relevance under Fed.R.Civ.P. 26(b)(1). In addition, Rule 26(b)(2) states, in pertinent part:

> "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that : (i) the discovery sought is unreasonably cumulative or

duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c)."

Rule 26(c) provides that the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment oppression, or undue burden or expense," including an order "that the disclosure or discovery not be had."

In general, the Plaintiff's income stream would be relevant to the issue of economic damages flowing from her loss of salary. Thus, income tax returns, W-2's or other earnings statements, or returns from businesses owned would be discoverable, subject to an appropriate protective order. However, information as to bank accounts, credit accounts, etc. have much less relevance to the central issue of income flow. In addition, such documents would likely contain a great deal of personal information (such as expenditures) that has no relevance whatsoever to this case.

Because Defendant has not demonstrated that it cannot obtain the necessary and relevant financial information in a less intrusive manner, and because, indeed, the relevant information is adequately discoverable through direct income or earnings statements, the motion to compel the production of the specific documents in question will be denied.

### III.  CONCLUSION

For the reasons and under the terms set forth above,

Defendant' motion to compel discovery [Docket #19] is DENIED.

The motion of the Detroit Free Press and Chastity Pratt to intervene and for protective order [Docket #21] is GRANTED.

SO ORDERED.


                                           S/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

Dated: December 13, 2007

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 13, 2007.


                                           S/Gina Wilson
                                           Judicial Assistant